UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:26-cr-36-VMC-CPT

SALVADOR CUEVAS JR.

**UNITED STATES' SENTENCING MEMORANDUM**

The Court should sentence the defendant, Salvador Cuevas Jr. (Cuevas), to a Guidelines sentence of 70-87 months. Reasons for sentencing at the high end of the Guidelines or higher include the terrible lethality of the amount of fentanyl Cuevas was caught transporting and his violation of conditions of pre-trial release repeatedly using cocaine. On the more positive side of the ledger is Cuevas' timely plea to the charged offenses. In support of its recommended sentence, the United States provides the following:

**Factual Background**

The defendant conspired with others and brought over five kilograms of fentanyl from Los Angeles to Tampa to distribute it into our community. According to the notice of maximum penalty, elements and factual basis in this case, Doc. 62, the following are the facts in this case:

On or about January 6, 2026, detectives with the Tampa International Airport Police Department (TIAPD) conducted a narcotics investigation

involving United Airlines flight #418 leaving Los Angeles International Airport (LAX) and arriving to Tampa International Airport (TPA) on January 6, 2026.

TIAPD detectives observed Salvador Cuevas Jr. waiting for a bag and appearing nervous, continuously looking around, and repeatedly checking his phone considerably more than other passengers. TIAPD detectives made contact with Cuevas Jr. and conducted a consensual encounter. Cuevas Jr. identified his bag, which had a United bag tag with the name "CUEVASJR/SAL" attached. TIAPD detectives asked Cuevas Jr. if they could search his bag, and he said that they could. Law enforcement officers then found five clear vacuum sealed packages in Cuevas Jr.'s bag.

A TIAPD Narcotics Detection Dog (NDD) K-9 unit conducted a check of several bags in the area. The NDD K-9 alerted to drugs within Cuevas Jr.'s bag.

Law enforcement officers conducted a field test of one of the packages in Cuevas Jr.'s bag, and it tested positive for cocaine. Subsequent laboratory analysis showed that the substance was N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), and not cocaine. One of the packages weighed 2.2 pounds or 1 kilogram. The total weight of the 5 clear vacuum sealed packages was 12.3 pounds or 5.5 kilograms.

During a post-*Miranda* interview, Cuevas Jr. stated a guy he knows as "Chuko" asked Cuevas Jr. to transport the five clear vacuum sealed packages

from Los Angeles, CA to Tampa, FL. Cuevas Jr. stated he was going to be paid $5000 to transport the packages for "Chuko." Cuevas Jr. stated he has transported items for "Chuko" on two other occasions, from Los Angeles, CA to New Jersey, and from Los Angeles, CA to Portland, Oregon, in November and December of 2025. Cuevas Jr. also said that his girlfriend told him not to do this because of the risk but that he did it anyway.

*See id.* at 3-4.

**<u>Procedural Background</u>**

On April 15, 2026, the grand jury returned a two-count superseding indictment against the defendant. Doc.35. One count of that indictment charged the defendant with conspiring to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl. *Id.* That indictment also charged the defendant with possessing with the intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl. *Id.*

On August 10, 2026, defendant Cuevas pleaded guilty to both counts of the superseding indictment before United States Magistrate Judge Amanda A. Sansone. Doc. 63. The Court adjudicated the defendant guilty, and the defendant's sentencing is currently scheduled for November 19, 2026. Docs. 64, 71.

In the final presentence investigation report (PSR), the United States

Probation Office has calculated the defendant's applicable guideline range of imprisonment for the underlying offense as 70-87 months based on a total offense level of 27 and a criminal history category of I under the United States Sentencing Guidelines. *See* Doc. 72. The United States agrees with that calculation.

**Role Adjustment**

The defendant objected to not receiving a minor or minimal role reduction under the Sentencing Guidelines, and the Probation Office has addressed that objection in an addendum to the PSR dated November 12, 2026. *See Id*. The United States agrees with the Probation Office regarding the non-applicability of such a role adjustment.

A defendant is not entitled to a minor rule reduction unless the defendant shows that he was a minimal or minor participant in the offense. *See* USSG §3B1.2. The defendant bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon,* 175 F.3d 930, 939 (11th Cir. 1999).

The extent and nature of the defendant's role in the relevant conduct is the "foremost" factor in determining whether the defendant performed a minor role. *De Varon*, 175 F.3d at 940. Where, as here, the defendant cannot "establish that [he] played a relatively minor-role" in the crime of conviction, and not a relatively "minor role in any larger criminal conspiracy," the defendant should be denied a

minor-role reduction. *Id.* at 944.

Before recent amendments to the Sentencing Guidelines, *De Varon* also permitted a court to "measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." 175 F.3d at 934. This prong involved a defendant "show[ing] that he was substantially less culpable than the other participants in the conspiracy." *United States v. Reyes*, 279 F. App'x 802, 805 (11th Cir. 2008).

But the Sentencing Guidelines, as of November 1, 2025, state that a mitigating role adjustment shall apply in drug trafficking cases "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." § 2D1.1(e)(2)(B). In essence, this instruction eliminates the second prong of *De Varon* in drug trafficking cases. *See United States v. Brown,* 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (recognizing that an amendment to the Sentencing Guidelines only abrogated Eleventh Circuit precedent "to the extent that" it affected the holding's definition of "underlying offense"); *United States v. Duncan,* 400 F.3d 1297, 1305 (11th Cir. 2005) (explaining that the unaffected holdings of a partially abrogated decision remain binding under the prior-panel-precedent rule). Equally important, then, is that the Sentencing Guidelines left the first-prong analysis in *De Varon* untouched. *De Varon*'s first (and mandatory) factor thus continues to provide the framework for the Court's analysis.

The Sentencing Guidelines provide a non-exhaustive list of factors for courts to analyze under that framework:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

§3B1.2 cmt. 3(c).

The revised Guidelines offer a few examples for when a court could reduce a sentence under § 3B1.2(a) in a drug trafficking case. They state that such a reduction is "generally warranted" when the defendant's responsibility primarily resulted from either performing a task "plainly among the lowest level of drug trafficking functions" or "performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation." § 2D1.1(e)(2)(B).

Those factors and examples demonstrate that this defendant is not eligible

for a minor role reduction here because he did not perform a low-level drug trafficking function. *First*, the defendant understood the scope and structure of the criminal activity. *See* §3B1.2 cmt. 3(c)(i). He knew the task at hand was to transport a trafficking amount of fentanyl approximately 3,000 miles across the country from California so that it could be distributed here in Florida. He admitted that he had transported controlled substances to other cities on other occasions for the same group of drug traffickers.

*Second*, the defendant was entrusted to transport the large quantity of fentanyl alone across the country. *See* §3B1.2 cmt. 3(c)(ii)-(iv) (providing that the "nature and extent" of the defendant's responsibilities are factors in analyzing whether he played a minor role); *De Varon*, 175 F.3d at 944. *See United States v. Monzo*, 852 F.3d 1343, 1347 (11th Cir. 2017) (considering, as part of the totality of the circumstances, that the defendant "participated in the distribution of high-purity [drugs], ... that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme"). Like the defendant in *Mendez*, this defendant's participation in transporting a large quantity of fentanyl across the country suffices to show that he performed more than a minor a role.

Furthermore, the defendant did not have a minor role because his actual conduct was coextensive with the relevant conduct. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of

cocaine on the vessel was a material consideration" for denying minimal participant or minor role); *see also United States v. Cruickshank,* 837 F.3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs transported is a significant consideration in minor role analysis, but explaining that it may not be the *only* factor the court considers); *United States v. Alarcon,* 194 F. App'x 727, 731 (11th Cir. 2006) (holding that defendant who "conspir[ed] to import two kilograms of heroin" and "admitted [that] he had personally transported that amount into the country" was not eligible for a minor role). It defies precedent and logic that a defendant entrusted with over five kilograms of incredibly lethal fentanyl and transporting the same all the way from the west to the east coast of the United States would be held to the functional equivalent of a person transporting smaller amounts of narcotics at a fraction of the distance.

The Guidelines keep intact the rule that a defendant cannot redefine the scope of "the criminal activity" by invoking the vast, multinational drug-trafficking enterprise that inevitably surrounds the transportation of narcotics. *Compare* § 2D1.1(e)(2)(B), *with De Varon*, 175 F.3d at 944. The minor-role inquiry remains anchored in the defendant's relevant conduct, not the abstract hierarchy of a transnational cartel. *De Varon*, 175 F.3d at 944 (warning that a defendant "may not establish that he played a relatively minor role by pointing to a broader conspiracy in which he was a small player"). *See, e.g., United States v. Martin*, 803

F.3d 581, 591 (11th Cir. 2015) ("only those participants who were involved in the relevant conduct attributed to the defendant may be considered."). Nothing in the revised Guidelines changes this foundational principle: a defendant's culpability is measured by the conduct for which he is held accountable, not by speculative reference to uncharged traffickers, financers, or producers.

Accordingly, a defendant cannot satisfy his burden under *De Varon* merely by reciting the scale of the international fentanyl trade and labeling himself a "low-level courier." Such a talismanic invocation does not establish a mitigating role by a preponderance of the evidence. *See De Varon*, 175 F.3dat 939. If a defendant were permitted to expand the "criminal activity" to encompass the entire production-to-distribution chain, the analysis would necessarily include the full scope, quantity, and value of that enterprise. These are precisely the considerations that render his contribution material, not minor. In other words, the argument is a double-edged sword: if the defense invites the Court to consider the whole scheme, it must accept the corresponding breadth of culpability stemming from the higher quantity of the drugs involved.

In any event, the defendant's conduct here does not involve a "low level trafficking function." The Guidelines offers the example of a person who distributes controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit, like supporting his

own addiction. § 2D1.1(e)(2)(B). This example aligns with the standard factors considered in *De Varon's* minor role analysis. A defendant who distributes controlled substances in user-level quantities typically holds smaller amounts of controlled substances—not the kilograms of fentanyl held by the defendant. *United States v. Medina*, 656 F. App'x 975, 981 (11th Cir. 2016). The fair market value of user-level quantities pales in comparison to the multiple thousands of dollars (approximately $125,000 - $250,000) of fentanyl that the defendant possessed.

*Third*, the defendant stood to substantially benefit from drug-trafficking venture. *See* §3B1.2 cmt. 3(c)(v). In contrast to the Guidelines' example, this defendant transported a trafficking, not a personal use amount, of fentanyl to make a significant amount of money. *Cf.* § 2D1.1(e)(2)(B).

The defendant's role in distribution here also contrasts from the Guidelines' example. While a distributor in user-level quantities plays a small role—getting product to end users—the defendant here played an important role by facilitating the transport of approximately 5.5 kilograms of fentanyl across the country for redistribution. Whereas the Guidelines now offer minor role relief in circumstances where someone delivered a user-level quantity of narcotics, it does not extend to circumstances where a defendant delivers the equivalent of hundreds of thousands of user-quantity doses of fentanyl.

Nor was the defendant a mere courier. The defendant and his coconspirators trafficked a large quantity of fentanyl across the country. The defendant knew that he was involved in an illegal activity from the start and agreed to undertake the trip. *United States v. Gil-Ramirez*, 686 F. App'x 651, 654 (11th Cir. 2017) (no minor role for defendant who imported 2,414 grams of cocaine into the United States). This conduct splits from the classic drug trafficking courier, where an individual takes small amounts of drugs on their person or in a personal vehicle from one place to another or delivers product to end users in a transaction lacking the complexity of a flight across the United States. The Guideline focuses on the lowest of the low, but Cuevas was entrusted with hundreds of thousands of dollars' worth of fentanyl. This role is "serious and important" to the scheme and thus is not eligible for a minor role reduction. *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023).

Therefore, consistent with *De Varon* and the structure of § 3B1.2 as amended, the Court's analysis should remain confined to the defendant's role within the relevant conduct, which is the transport of approximately 5.5 kilograms of fentanyl across the country for the purpose of evading detection while transporting large amounts of narcotics. That discrete conduct defines the offense of conviction, and within that context, the defendant cannot plausibly be characterized as a "minor" participant. Attempts to broaden the "criminal

activity" to the entire supply chain are inconsistent with Eleventh Circuit precedent, the structure of § 3B1.2, and the logic of the amendment itself. The defendant's role here: transporting a large (and incredibly lethal) amount of fentanyl across the United States was indispensable to the operation and therefore not "minor" in any meaningful sense.

## CONCLUSION

The defendant pleaded guilty to the fentanyl trafficking charges in this case, which involved over five kilograms of fentanyl, a large amount of dangerous, lethal fentanyl, as mentioned above. The offense is deadly serious, and the harm can hardly be overstated. Illegal fentanyl overdoses and use have killed over 100,000 Americans in recent years and ruined the lives of many more. The sentence in this case should reflect the seriousness of this scourge on our country.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: *_/s/ E. Jackson Boggs Jr._*
E. Jackson Boggs Jr.
Assistant United States Attorney
United States Attorney No. 080
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Jackson.Boggs@usdoj.gov

**U.S. v. Cuevas** **Case No. 8:26-cr-36-VMC-CPT**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Ryan Maguire, Esq.

*/s/ E. Jackson Boggs Jr.*
E. Jackson Boggs Jr.
Assistant United States Attorney
United States Attorney No. 080
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Jackson.Boggs@usdoj.gov